UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RABIULLAH SAIDY,

Petitioner,

v.

KRISTI NOEM, et. al.,

Respondents.

No.  1:26-cv-01708-DC-DMC-HC

FINDINGS AND RECOMMENDATIONS

Petitioner, an immigration detainee proceeding with counsel, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Respondents filed an answer, ECF No. 5, and Petitioner filed a traverse, ECF No. 6.

**I. BACKGROUND**

Petitioner contends he is a citizen of Afghanistan who entered the United States lawfully pursuant to Operation Allies Refuge on September 8, 2021. See ECF No. 1, pgs. 5-6. According to Petitioner, he was issued a Special Immigrant Visa (SIV) due to his work for the United States in Afghanistan and granted parole pursuant to 8 U.S.C. § 1182(d)(5) (INA § 212(d)(5)). See id. at 6. Petitioner contends he "completed his I-485 adjustment of status interview and was awaiting approval to receive his Green Card." Id. Petitioner "accidentally drove to the bridge to Canada and was encountered and detained by immigration authorities, who

1

detained him despite his SIV status and pending I-485 for adjustment of status." Id. Petitioner argues his detention was without a warrant or any individualized determination. See id. Petitioner asserts two claims for relief, a violation of the INA and violation of Petitioner's due process rights. See id. at 11.

Respondents contend that Petitioner's parole was valid through September 7, 2025. See ECF No. 5, pg. 1. Respondents contend that Petitioner applied for asylum on November 30, 2022, which was denied March 22, 2024, and then filed an Application to Register Permanent Residence or Adjust Status on June 5, 2024, which was suspended due to USCIS policy regarding noncitizens from Afghanistan. See id. at 2. Respondents assert that "Petitioner's FBI criminal rap sheet reflect that on July 25, 2015, in Afghanistan, Petitioner was arrested and was charged with the crime of murder." Id. According to Respondents, "[o]n January 23, 2026, Petitioner was encountered at a United States Port of Entry in Lewiston, New York." Id. Petitioner was issued a Notice to Appear and "charging him with removability under 8 U.S.C. § 1182(a)(7)(A)(i)(I), as an immigrant who, at the time of application for admission, was not in possession of a valid unexpired entry document." Id. Petitioner was taken into custody that same day and Respondents assert his custody is pursuant to § 1225(b). See id.

Respondents argue that Petitioner is subject to mandatory detention as an applicant for admission pursuant to § 1225(b), Petitioner therefore has no liberty interest in his release and his detention is required. See id. at 3.

## II. DISCUSSION

The undersigned finds that Petitioner has a protectable liberty interest in remaining out of custody, and he was deprived of this liberty without due process when re-detained without notice or a hearing.  Accordingly, the undersigned will recommend granting Petitioner's petition for writ of habeas corpus because his detention violates due process and recommend that Petitioner be immediately released from Respondents' custody under the same conditions he was released previously.

///

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. Hernandez v. Session, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all "persons" within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent."). These due process rights extend to immigration proceedings. Id. at 693–94. Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due."). The Court considers each step in turn.

As for the first step, the Court finds Petitioner has shown he has a protectable liberty interest. See Morrissey, 408 U.S. at 482. "Freedom from imprisonment—from government custody, detention, or other forms of physical restrain—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." Pinchi v. Noem, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). "Although in some circumstances the initial decision to detain or release an individual may be within the government's discretion, the government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release].'" Id. (quoting Morrissey, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen release from custody pending immigration proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific

3

conditional release in the case before them with the liberty interest in parole as characterized by Morrissey." R.D.T.M. v. Wofford, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

As a preliminary matter, the Court finds Respondents' argument that Petitioner cannot assert a liberty interest because he is an "applicant for admission" under § 1225 and therefore subject to mandatory detention, ineligible for release, parole, or a custody redetermination hearing, unpersuasive. Respondents contend that Petitioner is detained pursuant to § 1225(b)(2)(a), which provides:

> (2)Inspection of other aliens
> (A)In general Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.
> § 1225(b)(2)(a).

Petitioner's "Record of Deportable/Inadmissible Alien," issued January 23, 2026, and attached to Respondents' answer, documents that Petitioner provided the immigration officers his "work authorization [] based on an application to adjust status to LPR" which was valid until September 2, 2030. ECF No. 5-3, pg. 3. Respondents confirm that Petitioner has a pending Application to Register Permanent Residence or Adjust Status, filed on June 5, 2024. ECF No. 5, pg. 2.

The undersigned finds Petitioner cannot be subject to § 1225(b)(2)(a) because there is no evidence the immigration officers "determine[d] that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Indeed, they could not make such a determination because Petitioner had documentation of his work authorization, valid through September 2, 2030. This Court rejects the government's contention that Petitioner is an "applicant for admission" subject to § 1225(b)(2) and finds that Petitioner is detained under 8 U.S.C. § 1226(a) and its implementing regulations because Petitioner has resided in this country for over four years since Petitioner was released into the United States on parole and Petitioner's work authorization is valid through 2030.

/ / /

As to whether there exists a protected liberty interest, the Court finds Petitioner was released on parole, which created a reasonable expectation that he would be entitled to retain his liberty absent a material change in circumstances. Petitioner was initially released on his own recognizance. This sets a clear and reasonable expectation that Petitioner would be entitled to retain his liberty absent a material change in circumstances.

Respondents mention records of Petitioner's 2015 murder charge from Afghanistan, ECF No. 5, pg. 2, but the documents provided by Respondents make clear that USCIS was informed of this at least by 2024. See ECF No. 5-4, pgs. 2-7. Indeed, the FBI record provided by Respondents shows that the U.S. government was made aware of this charge against Petitioner on February 23, 2021, ECF No. 5-5, pg. 5. Thus, when Petitioner was granted parole on September 8, 2021, the government was aware of this charge and granted Petitioner parole and work authorization despite it. Perhaps for these reasons, Respondents do not claim Petitioner's parole was revoked for any reason and instead argue Petitioner is subject to § 1225(b)(2). See ECF No. 5.

Further, Petitioner contends his parole was granted pursuant to 8 U.S.C. § 1182(d)(5), ECF No. 1, pg. 6, which provides that:

> The Secretary of Homeland Security may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and **when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody** from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

1182(d)(5)(A)(emphasis added).

Respondents do not claim that the Secretary of Homeland Security has determined that the purpose of Petitioner's parole has been served. See ECF No. 6. Petitioner's detention goes against United States Supreme Court precedent which recognizes that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued release. See Morrissey, 408 U.S. 471 at 482. Given this, the Court finds Petitioner has

established his liberty interest in his continued release.

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. To determine such, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews v. Eldridge, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner has lived in the United States for over four years and has valid work authorization through 2030. Despite that, Petitioner has now been detained for almost three months without any evidence of being afforded a bond hearing. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. See Manzanarez v. Bondi, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly); see also Colina-Meira v. Lyons, No. 1:25-cv-1716 CSK P, 2025 LX 673205 (E.D. Cal. Dec. 31, 2025).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any bond or custody redetermination hearing. "[T]he risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Chavarria, 2025 WL 3533606, at *3; see also A.E. v. Andrews, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025) ("The risk of an erroneous deprivation [of liberty] is high" when "[the petitioner] has not received any bond or custody redetermination hearing."). Civil immigration detention, which is "nonpunitive in purpose and effect[,]" is typically justified under the Due Process Clause only when a noncitizen presents a risk of flight or danger to the community. See Zadvydas, 533 U.S. at 690; Padilla v. ICE, 704 F. Supp. 3d 1163, 1172 (W.D. Wash. 2023).

/ / /

Thus, Court finds there is a serious likelihood Petitioner will be erroneously deprived of his liberty interest. Moreover, without any procedural safeguards to determine whether his re-detention was justifiable, the probative value of additional procedural safeguards is high. R.D.T.M., 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. See Garcia v. Andrews, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). This Court finds the government has an interest in enforcing immigration laws but Respondents' interest in detaining Petitioner without notice or a hearing here is low. See Ortega v. Bonnar, 415 F. Supp. 3d at 970; Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). Detention hearings in immigration courts are routine and impose a "minimal cost." Doe, 787 F. Supp. 3d at 1094. Even if Respondents believed they had a proper reason to detain Petitioner, such decision on their part would warrant written notice and a pre-detention hearing rather than automatic detention. See E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process").

On balance, the Court finds the Matthews factors weigh in favor of finding Petitioner is entitled to notice and a bond hearing, and Petitioner should have been provided such notice and a hearing before he was re-detained. The Due Process Clause requires that, at a minimum, "that a deprivation of life, liberty, or property be preceded by notice and opportunity for hearing appropriate to the nature of the case." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) (internal quotation marks and citation omitted). In criminal cases, parolees released on parole, which does not provide "absolute liberty," but rather "conditional liberty properly dependent on observance of special parole restrictions," are also entitled to due process, including a pre-deprivation hearing before their parole can be revoked. Morrissey, 408 U.S. at 480-86. "Numerous district courts have held that these principles extend to the context of immigration detention." F.M.V., 2025 WL 3083934 at *6 (collecting cases). Respondents identify no reason why written notice was not provided or why a pre-deprivation hearing could not be

7

held, and provided no evidence of "urgent concerns," thus, "a pre-deprivation hearing is required to satisfy due process." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025).

Thus, the undersigned finds Petitioner is entitled to relief as to his due process claims and will recommend granting Petitioner's petition for writ of habeas corpus.

### III. CONCLUSION

Based on the foregoing, the undersigned orders and  recommends:

1.      It is RECOMMENDED that Petitioner's petition for writ of habeas corpus, ECF No. 1, be GRANTED as Petitioner's detention violates due process;

4.      It is RECOMMENDED that Petitioner Rabiullah Saidy, A-241-559-418, be RELEASED IMMEDIATELY from Respondents' custody upon the same conditions as his prior release, with his belongings. Respondents shall not impose any additional restriction on him, such as electronic monitoring, unless that is determined to be necessary at a future pre-deprivation/custody hearing;

5.      It is RECOMMENDED that Respondents be ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven (7) day notice and a hearing before a neutral fact-finder where Respondents show: (a) there are material changed circumstances which demonstrate that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs.  See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam)

(stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). Thus, within 7 days after being served with these findings and recommendations, any party may file written objections with the Court. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: April 20, 2026

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

9